

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID M. NANGLE,<br><br>Defendant | Criminal No. *20CR 10039*<br><br>Violations:<br><br>Counts One - Ten: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Counts Eleven - Fourteen: Bank Fraud<br>(18 U.S.C. § 1344)<br><br>Counts Fifteen - Twenty-Three: Making False<br>Statements to a Bank<br>(18 U.S.C. § 1014)<br><br>Counts Twenty-Four - Twenty-Eight: Filing<br>False Tax Returns<br>(26 U.S.C. § 7206(1))<br><br>Wire Fraud Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461)<br><br>Bank Fraud Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(2)(A)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.     The defendant, David M. NANGLE was a resident of Lowell, Massachusetts.     From 1999 through the present, NANGLE served as an elected member of the Massachusetts House of Representatives, representing the 17th Middlesex District, which included Lowell and part of Chelmsford.

a. NANGLE earned a base salary of approximately $60,000 to $62,500 as a State Representative from 2014 to 2018. During this period, NANGLE received thousands of dollars in additional compensation that served as reimbursement for office expenses, miles, meals, and lodging. Furthermore, NANGLE received an additional $30,000 in yearly compensation for his House leadership positions in each of 2017 and 2018 (as Second Division Chair, a member of the House Speaker's leadership team), and an additional approximately $7,500 in yearly compensation for his Chairmanship positions in each of 2015 and 2016 (Committee on Ethics, and Committee on Steering, Policy, and Scheduling, respectively).

b. Despite his salary and perks, NANGLE was heavily in debt, had poor credit (with a credit score reported as low as 593), and had regular cash flow problems as a result of extensive gambling at various casinos in Connecticut ("CT Casino 1" and "CT Casino 2"), New Hampshire ("NH Casino 1" and "NH Casino 2"), Massachusetts ("MA Casino"), and Rhode Island ("RI Casino"), among others, and placing thousands of bets on internet gambling sites, which caused NANGLE to incur tens of thousands of dollars in gambling-related spending and losses.

c. To sustain his gambling activities and keep himself afloat financially, defendant NANGLE illicitly used campaign funds to, among other things, (i) pay for personal expenses, (ii) defraud his bank lender, and (iii) collect income that he failed to report to the Internal Revenue Service.

d. NANGLE raised hundreds of thousands of dollars in campaign funds despite running for re-election unopposed since January 2013, which further allowed him

2

to use campaign funds to supplement his personal finances instead of using the funds for permissible campaign purposes.

2.      The Massachusetts Office of Campaign and Political Finance ("OCPF") was the independent state agency that administers Massachusetts campaign finance law pursuant to Massachusetts General Laws, chapter 55 and Title 970 of the Code of Massachusetts Regulations ("MGL, ch. 55" and "CMR 970," together, the "OCPF Rules").   OCPF was the depository for campaign finance reports filed by candidates and mandated by MGL, ch. 55.   OCPF was charged with reviewing such reports to help ensure accurate disclosure and legal compliance, publishing such reports on its website, and, in certain instances, conducting legal reviews of campaign finance activity.

3.      The Committee to Elect David Nangle ("Nangle Committee") was the political committee that NANGLE formed and maintained to receive campaign contributions and make campaign expenditures.   To receive funds and make expenditures, NANGLE opened a Nangle Committee bank account at a bank whose headquarters were in Rhode Island (the "RI Bank").   NANGLE appointed a treasurer (the "Treasurer") to timely file campaign finance reports and keep detailed records of all Nangle Committee campaign finance activity.   NANGLE, however, maintained ultimate authority over all Nangle Committee expenditures, including sole possession, control, and use of any and all Nangle Committee bank debit cards.   Pursuant to OCPF Rules:

  a.   NANGLE was prohibited from making any Nangle Committee expenditures that were primarily for NANGLE's or any other person's personal use;

  b.   NANGLE was required to truthfully and accurately disclose the purpose of each Nangle Committee expenditure;

3

    c. NANGLE was required to keep detailed records (bills, receipts) of all Nangle Committee expenditures, and any expenditure not supported by bills, receipts, or other documentation reflecting the purpose of the expenditure created a presumption that the expenditure was made for the personal use of NANGLE or another person; and

    d. NANGLE was required to electronically file his Nangle Committee campaign finance reports with OCPF under penalty of perjury with an electronic signature attributable to NANGLE.

4.     The Lowell Bank ("Lowell Bank") was a financial institution based in the Lowell area, which provided personal and business banking services, and whose deposits were federally insured by the Federal Deposit Insurance Corporation. The Lowell Bank issued home mortgage loans and home equity lines of credit ("HELOC") as part of its personal banking business. Borrowers applying for Lowell Bank mortgages and HELOCs were required to truthfully and accurately disclose all debts, sources of income, sources of funds for down payments, purposes of HELOC loan proceeds, among other representations, as part of the loan application process. These disclosures and representations were material to the Lowell Bank's decision-making process.

5.     Other individuals and entities:

    a. NANGLE was a member of a golf club in Lowell, MA (the "Lowell Golf Club"), which required members to pay yearly dues, membership fees, and other charges to maintain their personal membership and playing privileges.

    b. NANGLE's relative (the "Dracut Owner") owned a restaurant and catering business in Dracut, MA (the "Dracut Restaurant"). Beginning at least as early as 2011, NANGLE borrowed a total of approximately one hundred thousand dollars

4

from the Dracut Owner over the course of several years.  As of late 2018, NANGLE owed the Dracut Owner approximately $87,000.

c.  NANGLE's friend (the "Salisbury Owner") owned a restaurant in Salisbury, MA (the "Salisbury Restaurant").  From at least as early as 2015, NANGLE borrowed thousands of dollars from the Salisbury Owner.  As of September 2018, NANGLE had repaid his debt of at least approximately $10,000 to the Salisbury Owner.

d.  An individual (the "Lowell Owner") owned a restaurant in Lowell, MA (the "Lowell Restaurant").  From 2014 to 2015, NANGLE borrowed at least over a thousand dollars from the Lowell Owner, which NANGLE had repaid by approximately 2015.

e.  NANGLE's associate (the "Billerica Owner") owned a facilities maintenance company in Billerica, MA (the "Billerica Company").  In December 2014 and February 2015, the Billerica Owner paid NANGLE $10,000 and $17,000, respectively, for purported real estate "consulting" services that NANGLE provided to the Billerica Owner.  NANGLE used the funds to purchase a new home in Lowell, after which, the Billerica Company painted several rooms in NANGLE's Lowell house for free.  At the time NANGLE had received the February 2015 payment, NANGLE had provided no real estate consulting services for the Billerica Company.

f.  NANGLE's contractor (the "Contractor") owned a contracting company in Tyngsboro, MA.  In 2015, the Contractor provided goods and services of approximately $7,000 in NANGLE's new home.  NANGLE never paid for these services, and, instead, offered to find the Contractor other business after earlier

handing the Contractor his State Representative business card.  In 2016, NANGLE asked for and received a $7,000 "loan" from the Contractor, which NANGLE never offered to, nor did he, repay.  In 2017, NANGLE had the Contractor provide an additional approximately $1,000 of goods and services in his home.  Between 2015 and 2019, NANGLE made no payments to the Contractor for the "loan" or goods and services provided.  During this time, however, the Contractor was awarded lucrative bids for construction projects for which NANGLE had secured State funding.  In early 2019, NANGLE asked the Contractor to perform an additional job at his home worth several thousands of dollars.

g.  Another friend of NANGLE was employed by the Commonwealth in Lowell (the "Lowell State Employee").  NANGLE assisted the Lowell State Employee in obtaining his/her State job and other part-time work in Lowell.  From 2015 to 2017, NANGLE enlisted the Lowell State Employee to assist NANGLE in completing and filing false federal income tax returns.

## Overview of the Scheme to Defraud OCPF, the Nangle Committee, and Nangle Committee Donors

6.  From at least as early as 2014 and continuing through 2019, NANGLE devised a scheme to defraud OCPF, the Nangle Committee, and Nangle Committee Donors by using the Nangle Committee bank account as his own personal checking account to pay for various personal expenses and to withdraw cash, among other things.

<u>Manner and Means of Scheme to Defraud</u>

7.     Among the manner and means by which NANGLE conducted and participated in the scheme to defraud were the following:

   a.   NANGLE solicited Nangle Committee campaign contributions on the premise that the money would be used to enhance NANGLE's political future.

   b.   NANGLE, knowing that Nangle Committee funds were to be exclusively used to enhance his political future, instead used the funds to pay for expenses that were primarily personal.

   c.   NANGLE used Nangle Committee funds to pay for, among other things, thousands of dollars in Lowell Golf Club dues and personal charges, rental cars to travel to casinos, flowers for his girlfriend, gas, hotel and restaurant charges (for which NANGLE was already receiving State reimbursement), gift cards for his personal use, and to withdraw cash.

   d.   NANGLE, knowing that his use of Nangle Committee funds was subject to OCPF scrutiny from past OCPF audits and reviews of his campaign finances in 2007, 2009, 2010, and 2016, misled his staff and his Treasurer, and concealed his theft of campaign funds by filing and causing to be filed false campaign finance reports with OCPF that intentionally disguised the personal nature of such expenses and instead fraudulently described the purpose of such spending as political in nature.

## Scheme to Defraud

8.    From at least as early as 2014, NANGLE used the Nangle Committee bank debit card to pay for his personal dues and other personal charges at the Lowell Golf Club, and then disguised the charges by filing false OCPF disclosures, as follows:

| Appx. Date | Charge Amount | Lowell Golf Club Charge | NANGLE OCPF Disclosure |
|---|---|---|---|
| 11/9/2014 | $1,520 | Member dues, locker fees, assessments | "Catering" |
| 11/4/2015 | $1,675 | Member dues, locker fees, cart charges | "Catering" |
| 7/1/2016 | $654 | Member dues | "Mtg w/ campaign volunteers re: election" |
| 4/26/2017 | $865 | Member dues, locker fees, cart charges, green fees | "Fundraiser Catering" |
| 11/10/2018 | $836 | Member dues | "Campaign Volunteers Appreciation" |
| 4/19/2019 | $400 | Member account payment | "Hall Rental Setup Charge and Linens for Friendraiser" |

9.    From at least as early as 2014, NANGLE used the Nangle Committee bank debit card to pay a rental car company branch in Massachusetts ("Rental Car Co.") for rental car charges to travel to casinos, and then disguised the charges by filing misleading OCPF disclosures, which included the following:

| Car Rental Dates (Miles Driven) | Charge Amount | Records of Casino Activity | NANGLE OCPF Disclosure |
|---|---|---|---|
| 2/3/2016-2/6/2016[1] (333 miles, Wed-Sat) | $119.85 | 2/2/2016 – $2,000 cash withdrawal<br>2/4/2016 – trip to NH Casino 1<br>2/4/2016 – $300 cash withdrawal at MA Casino | "Rental car for travel to state house" |
| 3/9/2017-3/12/2017 (408 miles, Th-Sun) | $165.13 | 3/9/2017 – trip to and gambling at CT Casino 1<br>3/10/2017 – gambling at CT Casino 1 | "Rental car" |
| 4/27/2017-5/4/2017 (566 miles, Th-Th) | $356.52 | 4/29/2017 – $600 cash withdrawal<br>4/29/2017 – $500 cash withdrawal at MA Casino | "Rental car while car being repaired" |

---

[1] NANGLE also collected a State per diem of $104 (claiming 4 days travel to Statehouse for week ending 2/5/2016).

10.     From at least as early as 2014, the State of Massachusetts paid NANGLE, as a State Representative, thousands of dollars in additional compensation as reimbursement for his State House office expenses, meals, mileage, and lodging, as follows:

| Additional State Pay to NANGLE | 2018 | 2017 | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|
| Pay for office expenses | $15,000[2] | $15,000 | $7,200 | $7,200 | $7,200 |
| Per diem for miles, meals, and lodging | | | $4,160 | $4,134 | $4,108 |

11.     Despite collecting the above additional pay, NANGLE double-dipped by using Nangle Committee funds to pay for many of the same expenses, according to OCPF records, as follows (all figures approximate):

| NANGLE Campaign Spending | 2018 | 2017 | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|
| Travel | $0 (gas) $184 (car) | $68 (gas) $1,132 (car) | $1,082 (gas) $665 (car) | $2,530 (gas) $300 (car) | $3,053 (gas) $47 (car) |
| Restaurants | $13,268 | $10,025 | $10,444 | $9,676 | $11,243 |
| Lodging | $1,857 | $1,697 | $1,535 | $2,910 | $999 |

12.     In or about December 2017, NANGLE embezzled Nangle Committee funds by causing the Nangle Committee to issue two checks to a straw vendor ("Straw Vendor") for ostensible campaign expenses, according to NANGLE's OCPF filings.   In reality, the Straw Vendor did not provide any campaign services for these payments.   The Straw Vendor, who was a friend of NANGLE's relative, cashed the checks at NANGLE's relative's direction and gave the entire cash proceeds to NANGLE's relative, as follows:

| Check Date | Check Amount | Payee | NANGLE OCPF Disclosure |
|---|---|---|---|
| 12/6/2017 | $500 | Straw Vendor | "Fundraiser consulting" |
| 12/13/2017 | $1,000 | Straw Vendor | "Fundraiser consulting" |

---

[2] From 2014-2016, the State Legislature paid per diem rates of approximately $26 per day for miles, meals, lodging and office expenses related to legislators' work.   From 2017 forward, the State Legislature ceased paying per diems and paid a lump sum of $15,000 to each legislator for miles, meals, lodging and office expenses.

<u>Overview of Bank Fraud Scheme</u>

13.    From at least as early as 2014, NANGLE devised a scheme to defraud the Lowell Bank to

obtain hundreds of thousands of dollars in loans using materially false and fraudulent pretenses

representations, and promises.

<u>Manner and Means of Bank Fraud Scheme</u>

14.    Among the manner and means by which NANGLE defrauded the Lowell Bank were as

follows:

a.  NANGLE submitted materially false loan applications and other documentation to

the Lowell Bank to obtain thousands of dollars in bank loans.

b.  NANGLE intentionally misstated his income and understated his outstanding debt

obligations on his applications to obtain the loans on favorable terms, which placed

the Lowell Bank at risk of loss with respect to each loan.

c.  NANGLE intentionally concealed thousands of dollars in outstanding personal

debts to various restaurant owners – debts that NANGLE carried for extended

periods of time by spending Nangle Committee funds at the restaurants (including

for personal meals) as a means of appeasing his lenders (all figures approximate):

| Vendor | Owner | Debt Owed by Nangle to Owner | Campaign Funds Spent at Restaurant |
|---|---|---|---|
| Dracut Restaurant | Dracut Owner | Up to $100,000 from 2011 to present | $94,345 (2002 to 2019) |
| Lowell Restaurant | Lowell Owner | Over $1,500 in 2014 and 2015 | $12,592 (2005 to 2019) |
| Salisbury Restaurant | Salisbury Owner | Over $11,000 from 2013-2017 | $4,919 (2004 to 2019) |

d.  As an elected State official, NANGLE was required to report to the Massachusetts

State Ethics Commission each debt over $1,000 for each calendar year by filing a

yearly Statement of Financial Interest ("SFI").   From at least as early as 2014 to 2019, NANGLE concealed each of his above debts[3] by omitting them from his yearly SFI filings to the State Ethics Commission.

e.  NANGLE represented to the Lowell Bank that the purpose of the home equity loans was for "home improvement," knowing that he intended to use, and did use, significant portions of the loan proceeds to fund his gambling activities and to repay his creditors.

f.  NANGLE concealed from the Lowell Bank the fact that he was financially sustaining himself with an illegal source of income, *i.e.*, the regular misappropriation of money from his campaign account.

### Bank Fraud Scheme

15.     In or about January 2015, NANGLE applied to the Lowell Bank for a home mortgage loan. The Lowell Bank home mortgage application ("Form 1003"), among other things, required NANGLE to truthfully and accurately report his income and finances, and to represent that he did not borrow any funds to make the down payment for the mortgage.

a.  To create the illusion that NANGLE (i) had another source of income, and (ii) did not need to borrow any funds to make the down payment for his home mortgage, NANGLE submitted a "Consulting Agreement" with the Billerica Company that was back-dated to August 17, 2014, and a Form 1099 that reported $10,000 in "income" as part of his home mortgage application.

---

[3] This list of omitted debts was not exhaustive.   For example, defendant NANGLE failed to disclose on his SFI filings that he owed at least approximately $4,500 to a former State Representative, from whom he borrowed at least $7,000 during 2011 to 2014, and to whom he contributed hundreds of dollars of campaign donations using Nangle Committee funds.

b. As part of the home mortgage application, NANGLE submitted a letter to the Lowell Bank dated February 26, 2015, that falsely blamed his bad credit on his ex-wife, claiming that he had loaned her money, which she did not pay back in a timely fashion, when, in truth and fact, NANGLE had not loaned her any money, and in the months prior to the closing, NANGLE had spent thousands of dollars at NH Casinos 1 and 2, the RI Casino, and CT Casino 2.

c. Days prior to the February 27, 2015 closing on the Lowell Bank home mortgage, NANGLE received another $17,000 check from the Billerica Company, the entirety of which NANGLE used for the down payment to close on the purchase of the home.

d. As of February 27, 2015, NANGLE had performed no services for the Billerica Company pursuant to the "Consulting Agreement."

16.    Including the home mortgage loan described above, NANGLE fraudulently obtained a total of four loans from the Lowell Bank by making the following materially false statements and omissions on the approximate dates:

| Lowell Bank Loan | Loan Principal | # | Document/ Dates | Material false statement/omission |
|---|---|---|---|---|
| Home Mortgage Loan – xxx0665 | $191,250 | 1 | Credit explanation letter (2/26/15) | • Falsely blames ex-wife for causing him to miss recent car loan payments;<br>• Omits gambling activity as reason for financial difficulties. |
| | | 2 | Form 1003 (2/27/15) | • Lists car loan as only outstanding debt;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits Salisbury Owner and Lowell Owner debt and debt payments;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income;<br>• Falsely represents that no part of the down payment is borrowed. |

| Lowell Bank Loan | Loan Principal | # | Document/ Dates | Material false statement/omission |
|---|---|---|---|---|
| | | 3 | Employment/Income/Debt Certification (2/27/15) | • Represents that "I have not applied for or incurred any credit card or loan obligations that are not listed on my mortgage loan application …." |
| Home Equity Line of Credit (HELOC) – xxx3925 | $35,000 | 4 | Form 1003 (8/21/17) | • Writes "Home improvement" as purpose of loan;<br>• Lists home mortgage and credit card debt as only debts;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income. |
| | | 5 | Home Equity Consumer Loan Application ("HECLA") (9/13/17) | • Lists home mortgage and credit card debt as only debts;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits outstanding tax debt to IRS as described in paragraph 23;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income;<br>• Represents, among other things, that "I have no other outstanding financial obligations of any kind …." |
| HELOC - xxx2013 | $55,000 | 6 | Form 1003 (11/27/17) | • Writes "Home improvement" as purpose of loan;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income. |
| | | 7 | HECLA (12/10/17) | • Lists only debts as mortgage, credit card debts, and 2 medical debts;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits outstanding tax debt to IRS as described in paragraph 23;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income;<br>• Represents, among other things, that "I have no other outstanding financial obligations of any kind …." |

| Lowell Bank Loan | Loan Principal | # | Document/ Dates | Material false statement/omission |
|---|---|---|---|---|
| HELOC – xxx0838 | $115,000 | 8 | Form 1003 (4/26/18) | • Writes "Home improvement" and "Other" as purpose of loan;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income. |
| | | 9 | HECLA (6/15/18) | • Lists only debts as mortgage, credit card debt, and existing HELOC;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits outstanding tax debt to IRS as described in paragraph 23;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income;<br>• Represents, among other things, that "I have no other outstanding financial obligations of any kind …." |

17.     When making the false statements in the above Form 1003 and HECLA forms, defendant

NANGLE was aware and certified that "any intentional or negligent misrepresentation of

information contained in this application may result in civil liability and/or criminal penalties."

<u>False Tax Returns</u>

18.     The Internal Revenue Service ("IRS") is an agency of the United States Department of

Treasury responsible for enforcing and administering the tax laws of the United States.

19.     For the tax years 2014 to 2018, NANGLE filed individual personal tax returns.   For tax

years 2014 and 2015 NANGLE also filed a Schedule C as part of each return, which purported to

report deductions for all self-employment business income and expenses for his "consulting"

business.   In tax year 2016, NANGLE performed no "consulting" work, but still filed a Schedule

C to deduct purported self-employment expenses for his work as a state legislator.

20.     In addition, in each of tax years 2014 to 2018, NANGLE filed IRS Form 2106-EZ expense forms, which purported to report all of his deductible expenses arising from his work as a state legislator.   IRS Form 2106-EZ, however, permits the deduction of ordinary and necessary employee job expenses which *are not* reimbursed by the taxpayer's employer.   Thus, for tax year 2016, where NANGLE claimed over $75,000 in deductions for both self-employment *and* employee business expenses as a state legislator, NANGLE claimed that he had zero taxable income that year.

21.     From in or about February 2015 to February 2017, NANGLE enlisted the Lowell State Employee to assist NANGLE in electronically filing his federal income tax returns for 2014, 2015, and 2016 using the TurboTax software program, even though NANGLE knew that the Lowell State Employee had no expertise in tax or tax preparation.

22.     For each return for the tax years 2014 to 2016, NANGLE provided the Lowell State Employee with figures and entries to enter on TurboTax, directing the Lowell State Employee to input and inflate various mileage amounts and expenses, and make other false entries, so that NANGLE would receive a federal tax refund each year.   In at least one instance, the Lowell State Employee refused to hit the submit button on TurboTax because he was aware that the inflated expenses were fraudulent.   In response, NANGLE pressed the submit button, assuring the Lowell State Employee that NANGLE would "take the blame if anything happens."

23.     In or about 2017, NANGLE received a tax notice from the IRS advising NANGLE that the IRS had disallowed approximately $30,000 in deductions that NANGLE claimed on his 2014 federal income tax return, and that NANGLE owed additional taxes and penalties of over $7,000 for that year.

15

24.    Thereafter, NANGLE hired a professional tax preparer, located in Tewksbury, MA (the "Tax Preparer") to prepare and file his federal income tax returns for calendar years 2017 and 2018.   NANGLE, however, continued to mislead the Tax Preparer and defraud the IRS for those years by inflating different expenses (*e.g.*, charitable donations) and continuing to conceal income.

Materially False and Fraudulent Expenses and Deductions

25.    As detailed in paragraph 5(e) above, NANGLE collected $10,000 in December 2014 and $17,000 in February 2015 for purported "consulting" work, without having performed any consulting services prior to receiving such payments.   Furthermore, in 2016, NANGLE performed no "consulting" or self-employment work that would qualify for Schedule C deductions.   Despite performing little to no consulting work, NANGLE claimed tens of thousands of dollars in Schedule C business mileage expenses – on top of claiming tens of thousands of dollars in commuting mileage expenses purportedly related to his legislative job – in order to falsely reduce his reportable income and fraudulently inflate his federal tax refund.

26.    As shown below, NANGLE made and subscribed to demonstrably false income tax returns, in which NANGLE claimed the following additional out-of-pocket mileage expenses and charitable donations (all figures approximate):

| Tax Year Filing | 2018 | 2017 | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|
| 2106-EZ-Business mileage expense | $11,565 | $10,588 | $17,739 | $10,206 | $21,571 |
| 2106-EZ-Travel expense or tolls | N/A | N/A | $13,780 | $770 | $420 |
| 2106-EZ-Business expense | $5,642 | $4,300 | $11,384 | $5,904 | $6,930 |
| 2106-EZ-Meal/entertainment expense | $1,858 | $1,143 | $4,175 | $3,175 | $2,860 |
| 2106-EZ-Business, commuting, and other miles | 21,220 | 19,790 | 35,000 | 40,585 | 45,985 |
| Schedule C – business and other miles | N/A | N/A | 48,680 | 53,000 | 47,000 |

| Tax Year Filing | 2018 | 2017 | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|
| Schedule C – Car expenses | N/A | N/A | $11,420 | $11,418 | $6,462 |
| Donation to Charity 1 | N/A | N/A | $3,780 | $6,500 | $4,350 |
| Donation to Charity 2 | | | | $1,275 | $2,975 |
| Donation – other, not specified | $10,770 | $11,350 | $1,780 | | |

27.    As shown in the previous paragraph, NANGLE claimed to have driven over 300,000 miles during the period from 2014 to 2018, using his sole, primary vehicle, a 2008 Chevy sedan.   In 2014, for example, NANGLE claimed to have driven 47,000 miles for Billerica Company "consulting" work and "other" purposes.   Even assuming NANGLE had begun his "consulting" on the effective date of the agreement (August 17, 2014), NANGLE would have had to have driven approximately 345 miles per day, 7 days per week until December 31, 2014.[4]

28.    NANGLE also claimed thousands of dollars in false deductions for alleged charitable donations.   In April 2015, for instance, NANGLE claimed to have purchased $11,000 in "couches, tv, tables, chairs and dinnerware" which he then claimed to have donated two months later to Charity 1, claiming a charitable deduction of $6,500.   Representatives of Charity 1, however, denied receiving any such donation and NANGLE's financial records showed no records of such purchase.

<u>Concealed Income</u>

29.    As detailed, in part, in paragraphs 6 through 12 above, NANGLE stole from the Nangle Committee campaign fund on a yearly basis, using thousands of dollars in campaign contributions to pay his personal golf dues, rental car and other personal expenses, as well as withdraw cash via

---

[4] From December 3, 2013 through December 20, 2017, State vehicle inspection records for defendant NANGLE's 2008 sedan showed a total of approximately 132,500 miles driven.   For corresponding periods on his tax returns (tax years 2014 to 2017), NANGLE fraudulently claimed to have driven approximately 290,040 miles.

the Straw Donor – all of which NANGLE concealed from the IRS on his corresponding annual tax returns.

30.     As detailed below, OCPF records showed that NANGLE regularly used the Nangle Committee debit card to purchase thousands of dollars in gift cards that he fraudulently attributed to "supplies" or gifts for his "staff."   NANGLE's disclosures, however, were belied by the following: (i) instead of "supplies," business records showed that NANGLE purchased VISA credit cards of up to $500 in value, (ii) the Treasurer had no documentation supporting such disclosures, and (iii) gift cards purportedly used for "supplies" were used to pay for shoes, clothing, and golf fees, among other things, according to credit card records.

| Date | Vendor | Charge Amount | OCPF Disclosure |
|---|---|---|---|
| 4/9/2014 | CVS | $107.00 | Supplies |
| 8/18/2014 | CVS | $80.95 | Supplies |
| 9/8/2014 | CVS | $54.95 | Supplies |
| 11/6/2014 | CVS | $259.72 | Supplies |
| 12/23/2014 | CVS | $330.00 | Gifts for volunteers/staff |
| 12/23/2014 | CVS | $504.95 | Gifts for volunteers |
| 12/24/2014 | CVS | $504.95 | Gift Basket donations |
| 5/29/2015 | Rite Aid | $104.95 | Supplies |
| 12/22/2015 | Rite Aid | $509.90 | Staff and volunteer gifts |
| 12/28/2016 | CVS | $764.85 | Gift Certificates To Staff |
| 1/4/2017 | CVS | $254.95 | Supplies |
| 2/6/2017 | CVS | $154.95 | Supplies |
| 3/20/2017 | CVS | $254.95 | Supplies |
| 7/21/2017 | CVS | $305.95 | Supplies |
| 9/27/2017 | CVS | $305.95 | Supplies |
| 12/27/2017 | CVS | $255.95 | Gift cards for state house staff |
| 12/27/2017 | Rite Aid | $627.80 | Gift cards for staff Christmas |
| 12/24/2018 | Rite Aid | $1,655.60 | Christmas Gift Cards For Volunteers and Fundraiser Hosts |
| 1/31/2019 | Rite Aid | $106.95 | Supplies |
| 3/7/2019 | Rite Aid | $413.90 | Supplies |
| Total | | $7,559.17 | |

31.    As noted in paragraph 5(f) above, NANGLE also concealed from the IRS all of income that he received from the Contractor via checks, goods, and services, which included (i) the approximately $7,000 in kitchen and bathroom work done by the Contractor in NANGLE's home in 2015, for which NANGLE never paid; (ii) the $7,000 in check payments from the Contractor in 2016; and (iii) the approximately $1,000 in fireplace work done by the Contractor in NANGLE's home in 2017, for which NANGLE never paid.    NANGLE also failed to report to the IRS free painting work that the Billerica Company performed in his home in or about 2015.

32.    In the late evening hours of May 2, 2018 to the early morning hours of May 3, 2018, NANGLE won a $1,221 jackpot on a slot machine at CT Casino 2.    CT Casino 2 was required to report any winnings of over $1,200 to the IRS, including identifying the jackpot winner on an IRS Form W-2G.    Instead of truthfully reporting such winnings, defendant NANGLE paid another individual to collect NANGLE's winnings so that NANGLE could evade reporting this casino income to the IRS on Form W-2G.    This conduct was captured on CT Casino 2 video surveillance.

COUNTS ONE - TEN
Wire Fraud
(18 U.S.C. § 1343)

The Grand Jury charges:

33.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 12 of this Indictment.

34.     On or about the dates listed below, in the District of Massachusetts, and elsewhere, the defendant,

DAVID M. NANGLE,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 1 | 11/4/2015 | Debit card payment of $1,675 to Lowell Golf Club in Lowell, MA, which involved an interstate wire transmission to RI Bank's debit transaction processing center in East Providence, RI. |
| 2 | 2/3/2016 | Debit card charge of $119.85 to Rental Car Co. in Lowell, MA, which involved an interstate wire transmission to RI Bank's debit transaction processing center in East Providence, RI. |
| 3 | 7/1/2016 | Debit card payment of $654 to Lowell Golf Club in Lowell, MA, which involved an interstate wire transmission to RI Bank's debit transaction processing center in East Providence, RI. |
| 4 | 3/9/2017 | Debit card charge of $165.13 to Rental Car Co. in Lowell MA, which involved an interstate wire transmission to RI Bank's debit transaction processing center in East Providence, RI. |
| 5 | 4/26/2017 | Debit card payment of $865 to Lowell Golf Club in Lowell, MA, which involved an interstate wire transmission to RI Bank's debit transaction processing center in East Providence, RI. |

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 6 | 4/27/2017 | Debit card charge of $356.52 to Rental Car Co. in Tewksbury, MA, which involved an interstate wire transmission to RI Bank's debit transaction processing center in East Providence, RI. |
| 7 | 12/11/2017 | $500 Nangle Committee check payable to Straw Donor cashed at Chelmsford, MA bank, which involved an interstate wire transmission to RI Bank's check processing center in East Providence, RI. |
| 8 | 12/18/2017 | Mobile deposit of $1,000 Nangle Committee check payable to Straw Donor in MA, which involved an interstate wire transmission to RI Bank's check processing center in East Providence, RI. |
| 9 | 11/10/2018 | Debit card payment of $836 to Lowell Golf Club in Lowell, MA, which involved an interstate wire transmission to RI Bank's debit transaction processing center in East Providence, RI. |
| 10 | 4/19/2019 | Debit card payment of $400 to Lowell Golf Club in Lowell, MA, which involved an interstate wire transmission to RI Bank's debit transaction processing center in East Providence, RI. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS ELEVEN - FOURTEEN
### Bank Fraud
(18 U.S.C. § 1344)

The Grand Jury further charges:

35.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 17 of this Indictment.

36.     From at least as early as December 2014 through June 2018, in the District of Massachusetts, and elsewhere, the defendant,

### DAVID M. NANGLE,

knowingly executed and attempted to execute a scheme and artifice to defraud a financial institution, that is, the Lowell Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of the Lowell Bank, by means of materially false and fraudulent pretenses, representations, and promises, as follows:

| Count | Lowell Bank Loan | Appx. Loan Closing Date | Loan Principal |
|-------|------------------|-------------------------|----------------|
| 11 | Home Mortgage Loan – xxx0665 | 2/27/2015 | $191,250 |
| 12 | Home Equity Line of Credit (HELOC) – xxx3925 | 9/13/2017 | $35,000 |
| 13 | HELOC – xxx2013 | 1/10/2018 | $55,000 |
| 14 | HELOC – xxx0838 | 6/15/2018 | $115,000 |

All in violation of Title 18, United States Code, Section 1344.

## COUNTS FIFTEEN - TWENTY-THREE
### Making False Statements to a Bank
### (18 U.S.C. § 1014)

The Grand Jury further charges:

37.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 17 of this Indictment.

38.     On or about the dates set listed below, in the District of Massachusetts, and elsewhere, the defendant,

### DAVID M. NANGLE,

knowingly made a false statement and report, as detailed in paragraph 16 of this Indictment, for the purpose of influencing in any way the action of the Lowell Bank, an institution, the accounts of which are insured by the Federal Deposit Insurance Corporation, in order to obtain the following loans from the Lowell Bank:

| Count | Document/ Dates | Material false statement/omission |
|-------|-----------------|-----------------------------------|
| 15 | Credit explanation letter (2/26/15) in connection with Home Mortgage Loan – xxx0665 ($191,250) | • Falsely blames ex-wife for causing him to miss recent car loan payments;<br>• Omits gambling activity as reason for financial difficulties. |
| 16 | Form 1003 (2/27/15) in connection with Home Mortgage Loan – xxx0665 ($191,250) | • Lists car loan as only outstanding debt;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits Salisbury Owner and Lowell Owner debt and debt payments;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income;<br>• Falsely represents that no part of the down payment is borrowed. |
| 17 | Employment/Income/Debt Certification (2/27/15) in connection with Home Mortgage Loan – xxx0665 ($191,250) | • Represents that "I have not applied for or incurred any credit card or loan obligations that are not listed on my mortgage loan application ...." |

| Count | Document/Dates | Material false statement/omission |
|---|---|---|
| 18 | Form 1003 (8/21/17) in connection with Home Equity Line of Credit (HELOC) – xxx3925 ($35,000) | • Writes "Home improvement" as purpose of loan;<br>• Lists home mortgage and credit card debt as only debts;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income. |
| 19 | Home Equity Consumer Loan Application ("HECLA") (9/13/17) in connection with Home Equity Line of Credit (HELOC) – xxx3925 ($35,000) | • Lists home mortgage and credit card debt as only debts;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits outstanding tax debt to IRS as described in paragraph 23;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income;<br>• Represents, among other things, that "I have no other outstanding financial obligations of any kind ...." |
| 20 | Form 1003 (11/27/17) in connection with HELOC - xxx2013 ($55,000) | • Writes "Home improvement" as purpose of loan;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income. |
| 21 | HECLA (12/10/17) in connection with HELOC - xxx2013 ($55,000) | • Lists only debts as mortgage, credit card debts, and 2 medical debts;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits outstanding tax debt to IRS as described in paragraph 23;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income;<br>• Represents, among other things, that "I have no other outstanding financial obligations of any kind ...." |
| 22 | Form 1003 (4/26/18) in connection with HELOC – xxx0838 ($115,000) | • Writes "Home improvement" and "Other" as purpose of loan;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income. |
| 23 | HECLA (6/15/18) in connection with HELOC – xxx0838 ($115,000) | • Lists only debts as mortgage, credit card debt, and existing HELOC;<br>• Omits Dracut Owner debt and monthly debt payments;<br>• Omits outstanding tax debt to IRS as described in paragraph 23;<br>• Omits NANGLE's regular use of campaign funds for personal use as "Other" income;<br>• Represents, among other things, that "I have no other outstanding financial obligations of any kind ...." |

All in violation of Title 18, United States Code, Section 1014.

## COUNTS TWENTY-FOUR - TWENTY-EIGHT

### Filing False Tax Returns
### (26 U.S.C. § 7206(1))

The Grand Jury further charges:

39.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 32 of this Indictment.

40.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

### DAVID M. NANGLE,

did willfully make and subscribe a U.S. Individual Income Tax Return, Form 1040, for the calendar years set forth below, each of which was verified by a written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, and each of which defendant did not believe to be true and correct as to every material matter in that each return understated defendant's total income and overstated his total deductions, as a result of which each return understated the amount of taxes due and owing for that year.

| Count | Calendar Year | Appx. Filing Date |
|-------|---------------|-------------------|
| 24    | 2014          | 2/7/2015          |
| 25    | 2015          | 4/17/2016         |
| 26    | 2016          | 2/18/2017         |
| 27    | 2017          | 4/14/2018         |
| 28    | 2018          | 2/22/2019         |

All in violation of Title 26, United States Code, Section 7206(1).

25

## WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

1.      Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Ten of this Indictment, the defendant

DAVID M. NANGLE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## BANK FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(2)(A))

1.    Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1344 and 1014, set forth in Counts Eleven through Twenty-Three in this Indictment,

### DAVID M. NANGLE,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

2.    If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

27

A TRUE BILL

_____
FOREPERSON

_____
DUSTIN CHAO
KUNAL PASRICHA
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: FEBRUARY 13, 2020
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK